1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CRYSTAL O.,

                   Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

                   Defendant.

CASE NO. C24-5351-BAT

**ORDER AFFIRMING THE
COMMISSIONER AND DISMISSING
THE CASE WITH PREJUDICE**

Plaintiff Crystal O. seeks review of the denial of her application for Supplemental

Security Income. She argues that the ALJ erred in evaluating the medical opinions, plaintiff's

testimony, and the lay witness evidence; she seeks remand for an award of benefits or, in the

alternative, remand for further administrative proceedings before a different ALJ. Dkt. 2. For the

reasons below, the Court **AFFIRMS** the Commissioner's final decision and **DISMISSES** the

case with prejudice.

## BACKGROUND

Plaintiff is currently 44 years old, has completed a GED, and has no past relevant work.

Tr. 639. She applied for benefits in February 2017, alleging disability as of December 1, 2015.

Tr. 256. At the February 2019 hearing she amended her alleged onset date to February 21, 2017,

the application date, but at the October 2023 hearing counsel stated that the correct alleged onset

date is December 16, 2015. Tr. 42-42, 659. In September 2019, the ALJ issued a decision finding

plaintiff not disabled. Tr. 21-32. Plaintiff sought judicial review, and this court reversed that decision and remanded the case for further administrative proceedings. Tr. 721-34. In January 2024, the ALJ issued a second decision finding plaintiff not disabled. Tr. 616-40. Plaintiff now seeks review of the second unfavorable decision.

### THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ found plaintiff had not engaged in substantial gainful activity since the application date; she had the following severe impairments: post-traumatic stress disorder (PTSD), major depressive disorder, generalized anxiety disorder, panic disorder, and agoraphobia; and these impairments did not meet or equal the requirements of a listed impairment. Tr. 619-20. The ALJ found plaintiff had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: understand, remember, and apply short and simple instructions; perform routine, predictable tasks; not in a fast-paced, production type environment; make simple decisions; exposure to occasional, routine workplace changes; no interaction with the general public; and occasional interaction with coworkers and supervisors, but not in a team oriented environment. Tr. 622. The ALJ found plaintiff had no past relevant work, but as there are jobs that exist in significant numbers in the national economy plaintiff could perform, she was not disabled. Tr. 639-40.

### DISCUSSION

The Court may reverse the ALJ's decision only if it is not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard. *Molina v.*

---

[1] 20 C.F.R. §§ 404.1520, 416.920.

ORDER AFFIRMING THE COMMISSIONER AND DISMISSING THE
CASE WITH PREJUDICE - 2

*Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). The ALJ's decision may not be reversed if the ALJ committed harmless error. *Id.* at 1111. The Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Where the evidence is susceptible to more than one rational interpretation, the Court must uphold the Commissioner's interpretation. *Id.*

### A.    Medical opinions

Plaintiff argues the ALJ erred in evaluating the medical opinions. Dkt. 16 at 3. For cases filed before March 2017, as this one was, the ALJ should generally give more weight to the opinion of a treating doctor than to a non-treating doctor, and more weight to the opinion of an examining doctor than to a non-examining doctor. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Where not contradicted by another doctor, an ALJ may reject a treating or examining doctor's opinion only for "clear and convincing reasons." *Id.* at 830-31. Where contradicted, an ALJ may reject a treating or examining doctor's opinion only by giving "specific and legitimate reasons" that are supported by substantial evidence in the record. *Id.* at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). An ALJ does this by setting out a detailed and thorough summary of the facts and conflicting evidence, stating her interpretation of the facts and evidence, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ must do more than offer her conclusions; she must also explain why her interpretation, rather than the treating doctor's interpretation, is correct. *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).

#### 1.    Dr. Bowes

Tasmyn Bowes, Psy.D., examined plaintiff in December 2015. Tr. 405-09. She opined plaintiff had marked limitations in the ability to follow detailed instructions, perform activities

ORDER AFFIRMING THE COMMISSIONER AND DISMISSING THE
CASE WITH PREJUDICE - 3

within a schedule, maintain regular attendance, be punctual within customary tolerances, maintain appropriate behavior in a work setting, and complete a normal workday and work week without interruptions from psychologically based symptoms, along with numerous additional moderate limitations. Tr. 408. She opined that these limitations would last 6 to 12 months and recommended psychotherapy, a psychiatric evaluation, and appropriate psychotropic intervention. Tr. 409.

The ALJ gave this opinion limited weight. Tr. 633. The ALJ noted Dr. Bowes personally examined plaintiff and the record supports limitations due to plaintiff's mental health conditions, but the ALJ also noted this examination occurred one month after plaintiff's niece was taken from her custody and it was thus reasonable that she had increased mental health symptoms so soon after the traumatic occurrence. *Id.* The ALJ also found this examination was years prior to plaintiff's application date and Dr. Bowes did not review subsequent records, and that Dr. Bowes noted numerous normal findings on mental status examination, which the ALJ found to be inconsistent with marked limitations aside from social limitations and reports of panic and agoraphobia. *Id.* The ALJ also noted Dr. Bowes was uncertain these limitations would last a year and recommended evaluation and mental health treatment with plaintiff chose not to pursue. *Id.* The ALJ found this opinion inconsistent with the overall record showing minimal and conservative treatment for mental health conditions. *Id.*

Plaintiff argues the fact that Dr. Bowes's opinion preceded the application date (by 14 months, not years, as plaintiff notes) does not make it irrelevant, as the opinion demonstrates plaintiff's longitudinal limitations. Dkt. 16 at 3. However, the ALJ could reasonably conclude the opinion carried less weight because it predated the application date. *See Carmickle v.*

*Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008) ("Medical opinions that predate the alleged onset of disability are of limited relevance.")).

Plaintiff argues the fact Dr. Bowes noted normal findings does not undermine her opinion to the extent that her opinion is consistent with her abnormal findings. Dkt. 16 at 3. An ALJ may discount an opinion where there is a discrepancy between the limitations the doctor assessed and the doctor's clinical findings. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). The ALJ was not required to give weight to an opinion that was inconsistent with the doctor's findings upon examination. And despite discounting Dr. Bowes's opinion, the ALJ included limitations in the RFC determination that addressed the social limitations, panic, and agoraphobia the ALJ found to be supported, such as a limitation to routine, predictable tasks and limitations on interactions with others. The ALJ did not err by discounting Dr. Bowes's opinion of marked limitations when her examination included numerous normal findings.

Plaintiff argues the fact plaintiff failed to pursue treatments recommended by Dr. Bowes does not undermine Dr. Bowes's opinion, because the ALJ failed to consider plaintiff's reasons for not obtaining additional treatment. Dkt. 16 at 3-4. But the ALJ considered plaintiff's proffered reasons for not pursuing treatment when assessing plaintiff's testimony, as discussed below. Furthermore, the ALJ also noted Dr. Bowes's opinion that the limitations she opined may not last a year, along with the fact that Dr. Bowes conducted her examination one month after a traumatic event that the ALJ found would reasonably cause increased mental health symptoms. These were all valid reasons to discount the opinion.

In sum, the ALJ gave specific and legitimate reasons, supported by substantial evidence, for giving Dr. Bowes's opinion limited weight.

1          2.      *Dr. Wingate*

2          Terilee Wingate, Ph.D., examined plaintiff on multiple occasions. In October 2016, Dr.

3   Wingate opined plaintiff had marked limitations in the ability to complete a normal workday or

4   work week without interruptions from psychologically based symptoms and otherwise had

5   moderate or mild limitations. Tr. 366. In September 2020, Dr. Wingate again opined plaintiff had

6   marked limitations in the ability to complete a normal workday or work week without

7   interruptions from psychologically based symptoms and otherwise had moderate or mild

8   limitations; Dr. Wingate recommended plaintiff undergo an evaluation for vocational training.

9   Tr. 975-76. In June 2023, Dr. Wingate opined plaintiff had marked limitations in the ability to

10  perform activities within a schedule, maintain regular attendance, and be punctual within

11  customary tolerances without special supervision, communicate and perform effectively in a

12  work setting, maintain appropriate behavior in a work setting, and complete a normal workday or

13  work week without interruptions from psychologically based symptoms, and otherwise had

14  moderate or mild limitations. Tr. 1017-18.

15         The ALJ gave Dr. Wingate's October 2016 opinion partial weight, finding Dr. Wingate

16  had the opportunity to examine plaintiff and review Dr. Bowes's report, and the mostly mild and

17  moderate findings were consistent with the largely normal findings by Dr. Wingate on

18  examination and with the minimal and conservative mental health treatment in the record. Tr.

19  634. The ALJ found, however, the marked limitations Dr. Wingate assessed were not consistent

20  with plaintiff's reports to Dr. Wingate about things she did to calm herself such as using crystals

21  and her daily activities including work on a worm farm, yoga, reading self-help books, and

22  maintaining friendships. *Id.*

23

1    Plaintiff asserts that none of these reasons support the ALJ's rejection of Dr. Wingate's

2    opinion. Dkt. 16 at 6. Plaintiff does not provide any explanation or support for this assertion. The

3    Court finds that this conclusory assertion does not establish error in the ALJ's assessment of Dr.

4    Wingate's opinion.

5    The ALJ gave partial weight to Dr. Wingate's September 2020 opinion, finding Dr.

6    Wingate had personally examined plaintiff and reviewed records, and the mostly moderate and

7    mild findings were consistent with the largely normal findings on examination and the minimal

8    and conservative mental health treatment in the record. Tr. 636-37. The ALJ found the marked

9    limitations Dr. Wingate assessed were inconsistent with plaintiff's reports to Dr. Wingate about

10   her activities, including that she lived alone and got around by driving or riding a bike, she

11   managed finances, cooked meals, planted a garden, spent time outside, practiced chanting and

12   meditation, and saw others occasionally, with Dr. Wingate's opinion that vocational training

13   would help plaintiff, and with the overall evidence showing minimal and conservative mental

14   health treatment. Tr. 637.

15   Plaintiff asserts that none of the limited activities plaintiff reported were inconsistent with

16   Dr. Wingate's opinion and the fact that Dr. Wingate recommended vocational services does not

17   undermine her opinion. Dkt. 16 at 6. An ALJ may give less weight to an opinion that is

18   inconsistent with other evidence in the record. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d

19   1190, 1195 (9th Cir. 2004). The ALJ could rationally conclude that the activities plaintiff

20   reported to Dr. Wingate and Dr Wingate's opinion about vocational training being helpful were

21   inconsistent with the marked limitations the doctor opined. The ALJ also found the marked

22   limitations Dr. Wingate assessed were inconsistent with the minimal and conservative treatment.

23   Plaintiff disagrees with the ALJ's assessment of the opinion, but that is insufficient to establish

error. The ALJ gave specific and legitimate reasons, supported by substantial evidence, for giving the opinion partial weight.

The ALJ gave Dr. Wingate's June 2023 opinion little weight, finding that while Dr. Wingate had examined plaintiff a few times, Dr. Wingate did not have the opportunity to review the overall record that showed minimal and conservative treatment. Tr. 638. The ALJ also found Dr. Wingate did not have the chance to review the record that showed inconsistencies in plaintiff's reports to Dr. Wingate, including her report that therapy was helpful, which the ALJ found to be inconsistent with the severity of symptoms she reported, her report that she had been seeing her therapist for many years but there was no evidence of treatment sessions in some years, her report that she had not worked in many years, which the ALJ found to be inconsistent with her testimony about work and work-like activity, and her failure to disclose that she was in a long-term relationship and was living with her boyfriend at the time of the examination. Tr. 638.

Plaintiff asserts that none of the evidence the ALJ identifies is meaningfully inconsistent with Dr. Wingate's opinions of marked limitations. Dkt. 16 at 6. Plaintiff again makes this assertion without any explanation or support. The Court again finds this conclusory assertion does not establish error in the ALJ's assessment of Dr. Wingate's opinion.

Plaintiff's bare bones assertions and disagreements with the ALJ's interpretation of the evidence are insufficient to establish that the ALJ erred in evaluating Dr. Wingate's opinions. The Court finds that the ALJ gave specific and legitimate reasons, supported by substantial evidence, to discount or partially discount these opinions.

1    *3.    Dr. Wilkinson*

2        William Wilkinson, Ed.D., examined plaintiff in October 2018 and opined she had

3    marked limitations in the ability to perform activities within a schedule, maintain regular

4    attendance, and be punctual within customary tolerances without special supervision, maintain

5    appropriate behavior in a work setting, and complete a normal workday and work week without

6    interruptions from psychologically based symptoms; she otherwise had moderate or mild

7    limitations, and her overall severity rating was marked. Tr. 451.

8        Dr. Wilkinson examined plaintiff again in January 2021 and opined she had a severe

9    limitation in the ability to complete a normal workday and work week without interruptions from

10    psychologically based symptoms; she had marked limitations in the ability to perform activities

11    within a schedule, maintain regular attendance, and be punctual within customary tolerances

12    without special supervision, and maintain appropriate behavior in a work setting; she otherwise

13    had moderate and mild limitations, and her over all severity rating was marked. Tr. 980.

14        In January 2021, Melanie Mitchell, Psy.D., reviewed Dr. Wilkinson's and Dr. Wingate's

15    reports and assessed the same limitations as Dr. Wilkinson. Tr. 1025.

16        The ALJ gave Dr. Wilkinson's 2018 opinion partial weight, finding the mostly mild to

17    moderate limitations were consistent with the record as a whole and with plaintiff's

18    demonstrated functioning. Tr. 634. With respect to the marked limitations, the ALJ agreed

19    plaintiff had a marked limitation in social functioning as shown by her diagnosis of agoraphobia

20    and found Dr. Wilkinson's examination supported a limitation to simple tasks but concluded that

21    the other marked limitations he opined were not supported by the overall evidence, including

22    plaintiff's activities and the minimal and conservative treatment. *Id.*

23

1    Plaintiff asserts the ALJ erred by failing to account for the marked limitation in social

2    functioning in the RFC finding despite agreeing with that assessment. Dkt. 16 at 8. The ALJ is

3    responsible for "translating and incorporating" an opinion "into a succinct RFC." *Rounds v.*

4    *Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015). The ALJ found this portion of Dr.

5    Wilkinson's opinion to be supported and translated that opinion into a limitation to no interaction

6    with the general public and occasional interaction with coworkers and supervisors but not in a

7    team-oriented environment. Tr. 622. This was a rational interpretation of the evidence and

8    plaintiff's assertion to the contrary is insufficient to establish error in the ALJ's RFC finding.

9    Plaintiff also asserts that none of the reasons the ALJ gave for discounting the other

10    marked limitations Dr. Wilkinson assessed are legitimate, that the ALJ improperly acted as his

11    own medical expert, and Dr. Wilkinson's clinical findings fully supported his opinion about

12    plaintiff's functional limitations. Dkt. 6 at 8. An ALJ may discount a medical opinion where

13    there is a discrepancy between the opinion and the doctor's clinical notes, recorded observations,

14    and other opinions. *Bayliss*, 427 F.3d at 1216. And an ALJ may give less weight to an opinion

15    that is inconsistent with other evidence in the record. *Batson*, 359 F.3d at 1195. Here, the ALJ

16    concluded that the normal findings Dr. Wilkinson documented in his examination were

17    inconsistent with the marked limitations Dr. Wilkinson opined. That conclusion does not

18    establish the ALJ improperly acted as his own medical expert. The ALJ also concluded the

19    marked limitations Dr. Wilkinson assessed were inconsistent with plaintiff's reported activities

20    and with the minimal and conservative treatment plaintiff received. Plaintiff's assertion to the

21    contrary does not render this finding erroneous. The ALJ gave specific and legitimate reasons,

22    supported by substantial evidence, for giving partial weight to this opinion.

23

1      The ALJ gave Dr. Wilkinson's 2021 opinion limited weight for reasons similar to those

2  he gave for discounting the 2018 opinion, finding again that the marked limitation in social

3  functioning was supported by the evidence but the other marked and severe limitations Dr.

4  Wilkinson opined were not supported by Dr. Wilkinson's examination findings, plaintiff's

5  activities, and the minimal and conservative treatment. Tr. 637.

6      Plaintiff asserts the ALJ erred by rejecting this opinion for essentially the same reasons as

7  the earlier opinion. Dkt. 16 at 8. Finding no error in the ALJ's assessment of the 2018 opinion,

8  the Court finds no error in the ALJ's assessment of the 2021 opinion for similar reasons.

9      Plaintiff asserts the ALJ violated the rule of mandate. Dkt. 16 at 9. Because plaintiff's

10  assertion lacks any elaboration, the Court presumes plaintiff challenges the ALJ's decision to

11  give Dr. Wilkinson's 2018 opinion partial weight based on the Court's 2019 finding of error in

12  the ALJ's rejection of that opinion. *See* Tr. 726-28. In the 2019 decision, the Court found that the

13  ALJ erred in rejecting Dr. Wilkinson's 2018 opinion because Dr. Wilkinson's examination and

14  the record documented plaintiff's agoraphobia, panic attacks, missing appointments and avoiding

15  people. *Id.* On remand, the ALJ accepted Dr. Wilkinson's opinion that plaintiff had marked

16  social impairments based on this same evidence and incorporated limitations in the RFC to

17  address these impairments. Tr. 622, 634, 637. The ALJ did not violate the rule of mandate.

18      The ALJ gave Dr. Mitchell's opinion little weight, finding Dr. Mitchell did not examine

19  plaintiff, provided little explanation for the severity of her opinions, and the severity of her

20  opinions was not consistent with the overall record that shows minimal and conservative

21  treatment, and with plaintiff's continuation of her work "off the books." Tr. 637-38.

22      Plaintiff asserts the ALJ erred in rejecting Dr. Mitchell's opinion because the opinion is

23  not undermined by minimal and conservative treatment or by "off the books" work. Dkt. 16 at 9.

ORDER AFFIRMING THE COMMISSIONER AND DISMISSING THE
CASE WITH PREJUDICE - 11

1    This conclusory assertion with no explanation or support is insufficient to establish error in the

2    ALJ's assessment of the opinion. The ALJ gave specific and legitimate reasons, supported by

3    substantial evidence, for giving this opinion little weight.

4        *4.    Dr. Kamens*

5        William Kamens, M.D., examined plaintiff in April 2019 and opined her ability to

6    perform simple and repetitive tasks was poor to fair, ability to perform detailed and complex

7    tasks was poor, ability to perform work activities on a regular basis without special instructions

8    was poor, ability to perform work duties at a sufficient pace was poor, ability to maintain regular

9    attendance in the workplace and complete a normal workday without interruptions was poor, and

10   ability to interact with coworkers, supervisors, and the public and adapt to the usual stresses

11   encountered in the workplace was fair. Tr. 574.

12       The ALJ gave Dr. Kamens's opinion little weight. Tr. 635. The ALJ found that while Dr.

13   Kamens personally evaluated plaintiff, it was a one-time examination, his terms "poor" and

14   "fair" were vague, he reviewed a medical source statement from plaintiff's counselor but

15   otherwise did not review the longitudinal record, and the severity of the opinion was not

16   consistent with the evidence showing minimal and conservative mental health treatment and

17   none in recent years, or with Dr. Kamens's overall report. Tr. 636.

18       Plaintiff asserts that none of the reasons the ALJ gave were legitimate reasons supported

19   by substantial evidence. Dkt. 16 at 10. Plaintiff notes the Court found in its earlier decision in

20   this matter that "poor" is not an ambiguous rating. *Id.* (citing Tr. 728). And plaintiff asserts that

21   the ALJ's rejection of the opinion for essentially the same reasons as in the 2019 decision

22   violates the rule of mandate, that plaintiff's activities are not inconsistent with Dr. Kamens's

23   opinion, and that the ALJ improperly acted as his own medical expert. *Id.*

1      Even if the ALJ repeated the same error by finding the term "poor" to be vague,

2  plaintiff's conclusory assertions do not establish that all the other reasons the ALJ gave were

3  erroneous. The ALJ did not merely repeat the same reasons for discounting the opinion this

4  Court previously found to be erroneous, but conducted a de novo assessment of the opinion. The

5  ALJ was entitled to consider how well supported the opinion was, with respect to both other

6  evidence in the record and Dr. Kamens's own examination. For example, the ALJ found that Dr.

7  Kamens did not sufficiently consider how plaintiff performed so poorly during memory testing

8  but had no difficulty recounting her personal, medical, and employment history and detailing her

9  time-consuming activities around her home, and even told Dr. Kamens that she was pretty good

10  at remembering important things. Tr. 636. Plaintiff may disagree with the ALJ's interpretation of

11  the evidence, but conclusory assertions that the ALJ's interpretation was erroneous do not

12  establish error in the ALJ's decision. The ALJ gave specific and legitimate reasons, supported by

13  substantial evidence, for discounting the opinion. Any error in the ALJ's consideration of the

14  term "poor" was harmless. *Molina*, 674 F.3d at 1122.

15      *5.    Ms. Pearson*

16      Francesca Pearson, LMHC, plaintiff's treating therapist, completed a medical source

17  statement in February 2019. Tr. 488. Ms. Pearson opined plaintiff would need to rest for more

18  than 4 hours in an 8-hour workday and take an unspecified number of unscheduled breaks. *Id.*

19  She opined plaintiff had no ability or poor ability to perform all areas of basic mental activities

20  of work on a sustained basis. Tr. 489-90. She opined the overall severity of plaintiff's limitations

21  was extreme, including in activities of daily living, maintaining social functioning, and

22  maintaining concentration, persistence, and pace, and that plaintiff would experience four or

23

1    more episodes of decompensation within a 12-month period, each of at least two weeks duration.

2    Tr. 490.

3        In October 2019, Ms. Pearson wrote a letter describing plaintiff's diagnoses and

4    symptoms. Tr. 972. Ms. Pearson opined plaintiff's "mental health impairments are chronic, and

5    she will never meet a normal functional level," and stated that she did not see plaintiff as being

6    capable of maintaining employment. *Id.* Ms. Pearson stated she had observed in plaintiff

7    behavioral effects and cognitive function impairments such as difficulty with recall, crying

8    episodes, panic attacks and fear from having to drive to her appointments, and mental and

9    physical exhaustion from insomnia and from managing her unfavorable living conditions. *Id.*

10    Ms. Pearson believed plaintiff's mental health impairments greatly limited her ability to find

11    employment and she would always need help with basic living needs. *Id.*

12        Under the regulations governing this case, Ms. Pearson, a licensed mental health

13    counselor, is not an acceptable medical source. *See* 20 C.F.R. § 404.1527. The ALJ may evaluate

14    opinions of other medical sources using the same factors used to evaluate medical opinions of

15    acceptable medical sources. 20 C.F.R. § 404.1527(f). But the ALJ need only give specific,

16    germane reasons for rejecting opinions from sources that are not acceptable medical sources.

17    *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). Inconsistency with the medical and other

18    evidence is a germane reason to reject lay witness testimony. *See Bayliss*, 427 F.3d at 1218. And

19    the ALJ may discount lay witness evidence that is inconsistent with the claimant's reported

20    activities. *Carmickle*, 533 F.3d at 1164.

21        The ALJ gave these opinions little weight, finding although Ms. Pearson had a treating

22    relationship with plaintiff and was able to observe her functioning over time, her opinion was not

23    consistent with the longitudinal record. Tr. 635. The ALJ found the February 2019 opinion

ORDER AFFIRMING THE COMMISSIONER AND DISMISSING THE
CASE WITH PREJUDICE - 14

provided little explanation and pointed only to a diagnostic report that discussed only plaintiff's self-reported symptoms. *Id.* The ALJ found with respect to the October 2019 opinion, there were no contemporaneous treatment notes to support the extreme limitations, it was unclear if these findings were from an initial mental status examination or if they persisted throughout the relevant period, and, despite the extreme limitations Ms. Pearson assessed, there is no evidence she referred plaintiff for inpatient treatment or more intensive mental health treatment and instead treated plaintiff minimally and conservatively with twice a month counseling and discussed vocational rehabilitation services. *Id.* The ALJ also found Ms. Pearson's opinions were inconsistent with other evidence in the record, such as plaintiff's testimony she drove 100 miles per week, her ability to maintain a long-term relationship and reports of a good relationship with her sister and others in the community, her reports of working occasionally for a worm farmer and cleaning for a family for about three hours a week, and activities such as crocheting. *Id.* The ALJ also noted that Ms. Pearson did not explain why plaintiff would need to rest for four hours in a workday. *Id.*

Plaintiff argues that none of the reasons the ALJ gave for discounting Ms. Pearson's opinions are supported by substantial evidence. Dkt. 16 at 12. She asserts Ms. Pearson's second opinion provided support for her first opinion. *Id.* While this may be a plausible assertion, it is not one the ALJ was required to accept, particularly where Ms. Pearson did not herself state that she intended the explanation she provided in the second opinion to support both opinions.

Plaintiff asserts the fact that Ms. Pearson did not refer plaintiff for inpatient treatment is not inconsistent with her opinion. Dkt. 16 at 12. Ms. Pearson opined plaintiff experienced extreme limitations in her ability to function on a day-to-day basis and believed that plaintiff would experience multiple instances of decompensation of extended duration over the course of

a year. The ALJ could reasonably conclude that a mental health provider who observed this level of impairment in her patient would recommend treatment more intense than twice-per-month counseling sessions.

Plaintiff asserts the inconsistencies the ALJ identified do not undermine Ms. Pearson's opinions and instead demonstrate that plaintiff experienced waxing and waning of her symptoms. Dkt. 16 at 12. She also asserts the activities the ALJ identified, including having a boyfriend and limited work activity, are not inconsistent with Ms. Pearson's opinion. *Id.* Plaintiff again proposes an alternative interpretation of the evidence that this Court cannot rely on to overturn the ALJ's findings. The ALJ identified specific evidence in the record that was inconsistent with the extreme limitations Ms. Pearson opined. This was a rational interpretation of the evidence that this Court may not disturb.

The ALJ gave specific, germane reasons, supported by substantial evidence in the record, for discounting Ms. Pearson's opinions.

6.    *Non-examining physicians*

Consulting doctor Bruce Eather, Ph.D., reviewed the record in July 2017 and opined that plaintiff had the ability to perform some simple and complex instruction with some loss of concentration or pace dependent on psychological symptoms, and could work away from the general public and with casual, limited interactions with coworkers. Tr. 115-19. The ALJ gave this opinion great weight, finding that Dr. Eather considered plaintiff's symptoms, had reviewed the record available at the time, he explained his opinion and supported it with findings from exams, and his opinion was consistent with the evidence showing minimal treatment and plaintiff's activities including off the books work. Tr. 623-33. The ALJ found additional

1    limitations were necessary based on the evidence received at the hearing level, including reports

2    of isolation and panic attacks and difficulty with memory tasks at some exams. Tr. 633.

3         Plaintiff argues the ALJ's analysis is not supported by substantial evidence because Dr.

4    Eather did not consider plaintiff's testimony and did not review any evidence beyond July 2017,

5    and because the opinion was not consistent with the opinions of Dr. Bowes, Dr. Wingate, Dr.

6    Wilkinson, Dr. Kamens, and Ms. Pearson. Dkt. 16 at 13. However, the ALJ accounted for the

7    fact that Dr. Wilkinson did not consider plaintiff's testimony or other evidence from after July

8    2017 and included limitations beyond Dr. Eather's opinion based on these considerations. And

9    this Court has considered and found no harmful error in the ALJ's assessment of the other

10    medical opinions plaintiff identifies. The Court finds that the ALJ's assessment of Dr. Eather's

11    opinion is free of legal error and based on substantial evidence.

12         **B.**    **Plaintiff's testimony**

13         Plaintiff argues the ALJ erred in evaluating plaintiff's testimony. Dkt. 16 at 13. Where, as

14    here, the ALJ did not find plaintiff was malingering, the ALJ must provide clear and convincing

15    reasons to reject her testimony. *See Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). An

16    ALJ does this by making specific findings supported by substantial evidence. "General findings

17    are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence

18    undermines the claimant's complaints." *Lester*, 81 F.3d at 834. In other words, an ALJ's finding

19    that a claimant's testimony is not credible must be "sufficiently specific to allow a reviewing

20    court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and

21    did not arbitrarily discredit a claimant's testimony regarding pain." *Brown-Hunter v. Colvin*, 806

22    F.3d 487, 493 (9th Cir. 2015).

23

1    The ALJ found plaintiff's statements about the severity of her symptoms were

2    inconsistent with the minimal and conservative treatment plaintiff received. Tr. 624. The ALJ

3    noted plaintiff generally eschewed "traditional" medicine because she preferred a more holistic

4    approach, which the ALJ noted plaintiff had every right to do. Tr. 631. But the ALJ found

5    plaintiff only sporadically engaged in therapy, declined medication management, and at times

6    did not endorse any psychological symptoms. *Id.* The ALJ found when plaintiff sought medical

7    care for anxiety in 2015, the provider referred plaintiff to a naturopath, but there was no evidence

8    plaintiff ever sought any naturopathic treatment. Tr. 624-25. The ALJ found when plaintiff

9    underwent a mental health evaluation in 2017, the provider recommended only conservative

10   treatment, including medication management, which plaintiff chose not to pursue, and

11   counseling. Tr. 625. The ALJ noted long gaps in mental health counseling, including no evidence

12   of regular counseling sessions or other mental health treatment since mid-2020, which the ALJ

13   noted continued through 2023, despite recommendations for ongoing counseling. Tr. 628-30.

14       Evidence of minimal or conservative treatment is a valid reason to discount a claimant's

15   credibility. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). Unexplained, or

16   inadequately explained, failure to seek treatment or follow a prescribed course of treatment can

17   be a clear and convincing reason to question a claimant's credibility, but the ALJ must consider

18   the claimant's proffered reasons for not doing so. *Trevizo v. Berryhill*, 871 F.3d 664, 679-80 (9th

19   Cir. 2017). This is particularly true in the case of mental impairments, because a person suffering

20   from a mental illness may not realize that he needs medication, or even that his "condition

21   reflects a potentially serious mental illness." *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir.

22   1996).

23

1    Plaintiff argues the ALJ criticized plaintiff for her choice not to pursue traditional

2    medicine and forego medication, despite stating she had every right to pursue a holistic

3    approach. Dkt. 16 at 14. Plaintiff points to numerous instances in the decision where the ALJ

4    noted minimal and conservative treatment. However, in none of these instances is the ALJ

5    critical of plaintiff's stated preference for holistic treatment. Rather, the ALJ noted long gaps of

6    plaintiff not engaging in counseling or pursuing any mental health treatment and the fact there

7    was no evidence that plaintiff sought naturopathic treatment despite her stated preferences and

8    referrals to such treatment. In addition, the fact that providers recommended only conservative

9    treatment was a valid consideration whether or not plaintiff pursued that treatment. The ALJ

10   considered plaintiff's proffered reason for not pursuing more traditional treatment or taking

11   medication but found that plaintiff's minimal engagement with treatment (including treatment

12   such as counseling that she did not decline based on her preference for holistic treatment)

13   undermined the severity of her alleged symptoms. The fact the ALJ discussed plaintiff's minimal

14   and conservative treatment history does not establish the ALJ improperly criticized her choice

15   not to pursue traditional medicine. This was a valid basis to discount her testimony.

16   The ALJ found plaintiff's work history before the alleged onset date shows minimal

17   earnings, but subsequent evidence shows that she was self-employed for many years and worked

18   "off the books." Tr. 624. The ALJ found plaintiff's ongoing work "off the books" was

19   inconsistent with disabling symptoms and was a continuation of her prior work "off the books."

20   Tr. 624. Poor work history may constitute a valid basis for discounting a claimant's testimony.

21   *See Thomas*, 278 F.3d at 959. Plaintiff asserts the ALJ failed to acknowledge that plaintiff

22   testified that she was earning only about $220 per month. Dkt. 16 at 15. But the ALJ was entitled

23   to consider the full course of plaintiff's employment history, including work "off the books," and

ORDER AFFIRMING THE COMMISSIONER AND DISMISSING THE
CASE WITH PREJUDICE - 19

find her continued work "off the books" was inconsistent with her claim of disability, even if the amount she earned was minimal. The ALJ did not err in finding plaintiff's work history and continued work "off the books" to be inconsistent with her claim of disability. This was a valid reason to discount her testimony.

The ALJ summarized the medical evidence and found plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms were inconsistent with the record as a whole. Tr. 624-32. Plaintiff asserts the ALJ gave a selective summary of the evidence and merely reciting the evidence in support of his finding does not constitute a specific, clear, and convincing reason to discount a plaintiff's testimony. Dkt. 16 at 15. While the ALJ must "make fairly detailed findings in support of administrative decisions to permit courts to review those decisions intelligently," the ALJ "need not discuss all evidence presented." *Id.* at 1394-95. *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984). The ALJ's summary of the medical evidence spans more than eight pages and discusses findings from nearly all exhibits of medical records. While the ALJ did not discuss every detail of every medical record, plaintiff's bare assertion that the ALJ's summary of the evidence was selective is insufficient to establish error in the ALJ's assessment of the medical evidence.

In addition, an ALJ must do more than simply recite the evidence in support of his findings; instead, an ALJ's finding that a claimant's testimony is not credible must be "sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Brown-Hunter*, 806 F.3d at 493. Here, the ALJ did more than merely list the evidence in support of his assessment of plaintiff's testimony. The ALJ made connections between the medical evidence and his assessment of plaintiff's testimony throughout the

discussion of the medical evidence. For example, in the course of summarizing the medical

evidence, the ALJ found that there was no evidence that plaintiff sought any naturopathic

treatment despite being receiving a referral to such care (Tr. 625), that she had sufficient

cognitive functioning to recall and describe her symptoms and functioning as well as use coping

skills to help alleviate symptoms (Tr. 625), that she could engage in outside activities and

maintain relationships with increased symptoms at times due to life stressors (Tr. 627), that she

reported engaging in hobbies and "off the books" works (Tr. 627), that there were gaps in her

treatment (Tr. 628, 629), that there were inconsistencies in her reports to examining providers

(Tr. 630), that there was no evidence plaintiff stopped working due to her mental health

condition (Tr. 632), and, throughout the discussion, that there were numerous recommendations

for conservative treatment. The ALJ did not merely list the evidence in support of his finding,

but instead made connections between that evidence and the ALJ's assessment of plaintiff's

testimony. These findings were sufficiently specific for the Court to review the reasons the ALJ

gave. The ALJ did not err by merely reciting the evidence in support of his finding.

Plaintiff asserts the ALJ misapplied the "objective evidence test," arguing that once

plaintiff has shown that her medical impairments can reasonably be expected to cause some

degree of symptoms and limitations, the ALJ could not reject her testimony based solely on

whether objective evidence supports the degree of limitation plaintiff alleges. Dkt. 16 at 15.

However, while a lack of supporting objective medical evidence cannot be the sole reason an

ALJ discounts a claimant's testimony, it is a relevant factor that the ALJ can consider in

analyzing testimony. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). The ALJ did not

discount plaintiff's testimony based solely on a lack of support in the objective evidence.

ORDER AFFIRMING THE COMMISSIONER AND DISMISSING THE
CASE WITH PREJUDICE - 21

1  Because the ALJ gave other valid reasons for discounting plaintiff's testimony, the ALJ did not

2  err by also considering whether the objective evidence supported her testimony.

3          The ALJ found while plaintiff at times reported depression and anxiety and exhibited

4  varied difficulty with memory and concentration tasks, mental status examinations often

5  documented normal findings and plaintiff reported an array of activities of daily living. Tr. 632.

6  Plaintiff asserts that it is erroneous to reject a claimant's testimony because symptoms wax and

7  wane, that none of plaintiff's activities are inconsistent with her testimony, and that none of her

8  activities meet the threshold for work activity or show that she could perform full-time

9  competitive work on a sustained basis. Dkt. 16 at 15-16. These conclusory assertions without

10  explanation or reference to evidence in the record fail to demonstrate error in the ALJ's analysis.

11  Again, an ALJ may consider objective findings upon examination when evaluating a claimant's

12  testimony. *Burch*, 400 F.3d at 681. And an ALJ may consider contradictions between a

13  claimant's reported activities and her asserted limitations when evaluating claimant testimony.

14  *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). The ALJ could

15  rationally find that the frequent normal findings on mental status exam and various activities

16  plaintiff reported throughout the record were inconsistent with her testimony as to disabling

17  symptoms. Because this was a rational interpretation of the evidence, the Court may not disturb

18  it. The ALJ did not err in considering the findings on exam or plaintiff's reported activities when

19  evaluating her testimony.

20          The ALJ found there was no evidence plaintiff stopped working due to her mental health

21  conditions, noting her testimony that she quit her job in July 2014 to care for her niece's infant,

22  as well as her testimony that she left her last job because the business closed. Tr. 632. Plaintiff

23  asserts that these are not clear and convincing reasons to reject her testimony about her

ORDER AFFIRMING THE COMMISSIONER AND DISMISSING THE
CASE WITH PREJUDICE - 22

1    symptoms since 2017. Dkt. 16 at 16. The ALJ may consider the fact that a claimant left her job

2    for reasons other than her impairments when assessing her testimony. *See Bruton v. Massanari*,

3    268 F.3d 824, 828 (9th Cir. 2001). Even if plaintiff is correct in asserting the reason plaintiff

4    stopped working in 2014 would be insufficient to support an assessment of her testimony about

5    her symptoms years after this occurred, the ALJ did not err by considering this factor among

6    others. This was a valid consideration in evaluating plaintiff's testimony.

7    In sum, the ALJ gave clear and convincing reasons, based on substantial evidence in the

8    record, for discounting plaintiff's symptom testimony.

9    **C.    Lay witness evidence**

10    Plaintiff argues the ALJ erred in assessing the lay witness evidence from plaintiff's friend

11    Matt B. Dkt. 16 at 16. Lay testimony as to a claimant's symptoms is competent evidence that the

12    ALJ must take into account, unless the ALJ rejects the lay testimony by giving specific reasons,

13    based on evidence in the record, that are germane to that witness. *Bruce v. Astrue*, 557 F.3d

14    1113, 1115 (9th Cir. 2008).

15    In April 2017, Mr. B. wrote plaintiff cannot drive long distances and has panic attacks,

16    anxiety, lack of confidence, depression, and lack of direction. Tr. 288. He wrote plaintiff's

17    impairments affect her ability to drive, get along with others, complete household chores, and

18    manage stress or change in routine, but she goes out of the house daily and is able to go out

19    alone, shop in stores, drive short distances, take care of her dog, and prepare meals. Tr. 288-295.

20    The ALJ found that while Mr. B. had a personal relationship with plaintiff and was in a

21    position to observe her daily functioning, his statements were inconsistent with the record as a

22    whole, including the medical evidence which showed that plaintiff's symptoms were managed

23    with limited therapy. Tr. 638. The ALJ also noted Mr. B. did not discuss plaintiff's "off the

ORDER AFFIRMING THE COMMISSIONER AND DISMISSING THE
CASE WITH PREJUDICE - 23

1   books" work, which the ALJ found suggested he was unaware of all of plaintiff's functioning. *Id.*

2   And the ALJ found Mr. B.'s statements were similar to plaintiff's allegations, which the ALJ had

3   found to be inconsistent with the medial evidence of record. *Id.* The ALJ therefore gave this

4   statement limited weight. *Id.*

5        Plaintiff asserts that the ALJ's finding that Mr. B.'s observations were inconsistent with

6   the record as a whole was not a germane reason to discount his statements. Dkt. 16 at 17.

7   However, inconsistency with the medical evidence is a germane reason to reject lay witness

8   testimony. *Bayliss*, 427 F.3d at 1218. Plaintiff's assertion to the contrary does not render this

9   reason invalid.

10       Plaintiff also asserts that the fact that Mr. B. did not discuss plaintiff's work activity does

11   not undermine his statements. Dkt. 16 at 17. But an ALJ may discount lay witness evidence that

12   is inconsistent with the claimant's reported activities. *Carmickle*, 533 F.3d at 1164. The ALJ

13   could rationally conclude that the fact that Mr. B. did not discuss activity that plaintiff reported

14   elsewhere undermined his statements.

15       Finally, where an ALJ has provided clear and convincing reasons for discounting a

16   claimant's testimony, those reasons are germane reasons for rejecting similar lay witness

17   testimony. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009). The

18   ALJ found that Mr. B.'s statements were similar to plaintiff's testimony and gave them limited

19   weight for this reason. This was a specific, germane reason for discounting his statement. The

20   ALJ did not err in evaluating Mr. B.'s statement.

21       Plaintiff includes a one-sentence summary of the observations recorded by Social

22   Security Agency interviewer T. Chandler but does not further address this evidence. Dkt. 16 at

23   17. To the extent plaintiff intended to make an argument regarding this evidence, the Court finds

ORDER AFFIRMING THE COMMISSIONER AND DISMISSING THE
CASE WITH PREJUDICE - 24

it was waived and does not further address it. *See Avila v. Astrue*, No. C07-1331, 2008 WL 4104300 (E.D. Cal. Sept. 2, 2008) at *2 (unpublished opinion) (citing *Nw. Acceptance Corp. v. Lynnwood Equip., Inc.*, 841 F.2d 918, 923-24 (9th Cir. 1996) (party who presents no explanation in support of claim of error waives issue)).

### D.    RFC and step five finding

Plaintiff argues that the ALJ improperly determined plaintiff's RFC and erred by basing his step-five finding on that RFC. Dkt. 16 at 18. This argument is based on plaintiff's previous assignments of error, all of which this Court has rejected. A claimant does not establish that an ALJ's step-five determination is incorrect by simply restating her arguments that the ALJ improperly discounted certain evidence. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-1176 (9th Cir. 2008). The Court has determined that the ALJ's assessment of the medical evidence, plaintiff's testimony, and the lay witness evidence was free of harmful legal error and supported by substantial evidence. Plaintiff's arguments based on the same allegations of error at the later steps in the disability determination process similarly fail.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

DATED this 21st day of November, 2024.

_____
BRIAN A. TSUCHIDA
United States Magistrate Judge

ORDER AFFIRMING THE COMMISSIONER AND DISMISSING THE
CASE WITH PREJUDICE - 25